IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAMANA K. PUPPALA, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09 CV 6804 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| WILL COUNTY COMMUNITY HEALTH ) | |
| CENTER; MARY M. COFFEY as Chief ) | |
| Executive Officer of the Will County ) | |
| Community Health Center; WILL COUNTY ) | |
| HEALTH DEPARTMENT; JOHN L. ) | |
| CICERO as Executive Director of the Will ) | |
| County Health Department; COUNTY OF ) | |
| WILL, STATE OF ILLINOIS; and ) | |
| LAWRENCE M. WALSH as County Executive ) | |
| of the County of Will, State of Illinois, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Ramana Puppala has filed this civil rights action against Will County, Illinois; Will County Community Health Center ("WCCHC") and the Will County Health Department ("WCHD"); Mary Coffey, chief executive officer of WCCHC; John Cicero, executive director of WCHD; and Lawrence Walsh, county executive for Will County. Puppala sues the individual defendants in their official as well as individual capacities.[1] Puppala claims deprivation of rights

---

[1] An "official capacity" suit against a public official is a suit against the entity of which that official is an agent. *Richman* v. *Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001). Thus, the official capacity claims are merely duplicative of the claims against Will County. Defendants WCHD and WCCHC have not asserted lack of capacity to sue or be sued, but the parties should clarify whether they have capacity to be sued under Fed. R. Civ. P. 17(b). *See*, *e.g.*, *Khan* v. *Cook County Dep't of Highways*, No. 93 C 1375, 1994 WL 523703, at *2 (N.D. Ill. 1994) ("Counties in Illinois are considered legal entities, and under the express terms of an Illinois statute can be sued in court. 55 ILCS 5/5-1001. Subdivisions of Illinois counties, such as county hospitals, or as is the case here a county department of highways, however, are generally not considered to be separate legal entities, and therefore cannot be sued."); *Reese* v. *Chi. Police Dep't*, 602 F. Supp. 441, 443 (C.D. Ill. 1984) ("The Chicago Police Department and the Cook County State's Attorney's Office, which do not enjoy separate legal existence independent of the City of Chicago and the County of Cook, respectively, are not suable entities and should therefore be dismissed."); *Mayes*

(continued...)

protected by the First Amendment in violation of 42 U.S.C. § 1983, conspiracy to violate First Amendment rights in violation of 42 U.S.C. § 1985, and retaliatory discharge under Illinois common law. Defendants have moved to dismiss the federal claims for failure to state a claim upon which relief may be granted and the state law claim for lack of subject matter jurisdiction. For the following reasons, defendants' motion [#16] is granted.

## BACKGROUND[2]

On January 2, 2007, WCCHC and Puppala, a physician licensed in Illinois, entered into an employment agreement, in which Puppala agreed to work for defendants as a full-time physician in obstetrics and gynecology until January 2010. Compl. ¶ 7. For this work, Puppala would receive a base annual salary of $215,200. *Id.* ¶ 8. The contract also required Puppala to serve as the Chairman of WCCHC's obstetrics and gynecology department for an additional $25,000 per year. *Id.* ¶ 9.

On October 27, 2008, Puppala filed suit in the Circuit Court of Illinois, Twelfth Judicial Circuit, Will County, Illinois. *Id.* ¶ 10.[3] Puppala sought damages and declaratory and injunctive relief for defendants' breach of contract. Ex. B to Compl. at 4-5, 7-8. For these violations, Puppala asked the court to terminate his employment agreement without liability to him and to award him damages. *Id.* On November 26, 2008, Puppala filed a supplementary motion for

---

(...continued)
v. *Elrod*, 470 F. Supp. 1188, 1192 (C.D. Ill. 1979) ("[W]e have found no statutory or case authority supporting a direct action against subdivisions of [a county].").
[2] All facts are taken from the complaint and presumed to be true for purposes of resolving this motion. *Dixon* v. *Page*, 291 F.3d 485, 486-87 (7th Cir. 2002). The complaint includes written instruments attached by exhibit. Fed. R. Civ. P. 10(c). Here, the included exhibits are the employment agreement, the complaint filed in the Illinois state courts, and the letter terminating Puppala.
[3] Puppala at times characterizes speech in his state court complaint and motion for preliminary injunction in a manner not borne out by the pleadings attached to the complaint. Where Puppala's characterizations are inconsistent with the state pleadings, the court recites the facts based on those pleadings rather than from the federal complaint.

preliminary injunction in the same case.[4] Ex. A to Pl.'s Resp. at 1. In that motion, Puppala more specifically alleged that WCCHC's patient care does not comply with the appropriate medical standards. *Id*. at 2-3. As a remedy, Puppala asked the court to declare his employment agreement void or enjoin defendants to give him more authority under the agreement, specifically the authority to hire physicians. *Id*. at 6.

On December 4, 2008, an evidentiary hearing was set for January 15, 2009, and Puppala was set to testify at that hearing. Compl. ¶ 11. Defendants terminated Puppala on December 5. *Id*. ¶ 12. Although defendants claimed to have cause for the termination, in fact, they terminated Puppala to prevent him from testifying against WCCHC in his case and to retaliate for complaints and actions in connection with that suit. *Id*. ¶¶ 13-14, 28-29. This wrongful discharge was the product of repeated conversations between Coffey and Cicero, who planned to retaliate against Puppala and prevent him from testifying. *Id*. ¶¶ 27-29.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp*. v. *Lease Resolution Corp*., 128 F.3d 1074, 1080 (7th Cir. 1997). In reviewing a Rule 12(b)(6) motion, the court takes as true all facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Dixon* v. *Page*, 291 F.3d 485, 486-87 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must provide the defendants with notice of the claims and establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, --- U.S. ----, 129 S.

---

[4] The court may validly consider the exhibit attached to Puppala's opposition to dismissal because it is factually consistent with the complaint. *See Thompson* v. *Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Burbach Aquatics, Inc*. v. *City of Elgin, Ill.*, No. 08-CV-4061, 2009 WL 1940787, at *3 (N.D. Ill. July 7, 2009).

Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, --- F.3d ----, 2010 WL 3385191, at *1 (7th Cir. Aug. 30, 2010). Rather, it is the facts that count.

## ANALYSIS

I. **First Amendment Claims – 42 U.S.C. § 1983**

In Count I, Puppala alleges that defendants violated his First Amendment rights by firing him, not only in retaliation for previous statements but also to prevent him from testifying in his law suit. Count I, therefore, permits of two theories of liability, one for punishment of speech already made, sometimes called retaliation, and one for threatening penalties for future speech, or prior restraint. *See Fairley* v. *Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) ("The Constitution prevents governmental actors from forbidding, or penalizing, speech that is protected under the first amendment. . . . Threatening penalties for future speech goes by the name 'prior restraint,' and a prior restraint is the quintessential first-amendment violation."). The court will analyze these claims separately, as *Fairley* requires. *Id* at 525.

    A.    **Retaliation for past speech**

To make out a First Amendment retaliation claim, a public employee must present evidence that (1) his speech was constitutionally protected; (2) he suffered a detriment likely to deter free speech; and (3) the speech was the but-for cause of the employer's action. *Gunville* v. *Walker*, 583 F.3d 979, 983-84 (7th Cir. 2009); *Fairley*, 578 F.3d at 525-26. A public employee's speech is protected by the First Amendment when the employee is speaking as a citizen on a matter of public concern. *Garcetti* v. *Ceballos*, 547 U.S. 410, 419, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). Employees do not speak as citizens for First Amendment purposes when they "make statements pursuant to their official duties." *Id.* at 421. Thus, the court must make "a

4

threshold determination regarding whether the public employee spoke in his capacity as a private citizen or as an employee." *Chaklos* v. *Stevens*, 560 F.3d 705, 711-12 (7th Cir. 2009). In determining the scope of an employee's duties, the "proper inquiry is a practical one." *Garcetti*, 547 U.S. at 424. The court should focus on the "duties an employee actually is expected to perform," rather than formal, written job descriptions. *Id*. at 424-25.

Defendants argue that *Garcetti* bars Puppala's claims because the subject matter of his speech – the standard of care at WCCHC – was related to his job duties. That argument, however, is inapposite to the issue, which is whether he spoke in fulfillment of his official duties. Defendants cannot and do not contend that Puppala filed suit against them as part of his employment responsibilities. Because Puppala clearly was not speaking pursuant to official duty when he alleged in his law suit substandard medical practices at WCCHC, he spoke in his capacity as a private citizen.

The next issue is whether Puppala was speaking about a matter of public concern. This is a question of law but one that must be considered in light of "the content, form, and context of a given statement, as revealed by the whole record." *Milwaukee Deputy Sheriff's Ass'n* v. *Clarke*, 574 F.3d 370, 377 (7th Cir. 2009) (citations omitted) (internal quotation marks omitted). Although no one factor is dispositive, content is the most important. *Id*. But even speech about a public topic will not be protected where the "'expression addresses only the personal effect upon the employee, or if the *only* point of the speech was to further some purely private interest.'" *Id*. at 378 (quoting *Gustafson* v. *Jones*, 290 F.3d 895, 908 (7th Cir. 2002)). For similar reasons, the Seventh Circuit has rejected blanket protection for law suits or communications made therein. *Wright* v. *Ill. Dep't of Children & Family Servs*., 40 F.3d 1492, 1505 (7th Cir. 1994) ("In short, airing private gripes in the form of a complaint or testimony

cannot alter their status as private gripes."). In this manner, the speaker's motivation can overcome content that appears to be in the public interest.

Puppala claimed in the Illinois case that he was "terminated from WCCHC on December 5, 2008 in unlawful retaliation for complaining about substandard WCCHC medical standards, filing Will County Circuit Court Case No. 08 CH 4973, and publicly testifying against the Defendants in this matter." Compl. ¶ 14. The facts concerning Puppala's expressions about these conditions are derived from his allegations in the state court case. These topics do touch on a matter of public concern, namely the quality of public health care in Will County. *See Churchill* v. *Waters*, 977 F.2d 1114, 1121 (7th Cir. 1992) (noting that the quality of patient care is "most definitely" a matter of public concern), *vacated* on other grounds, 511 U.S. 661, 114 S. Ct. 1878, 128 L. Ed. 2d 686 (1994). But the context and Puppala's apparent motivation behind this speech reveal its true nature as touching only on his private interest, his claim for breach of contract. *See* Ex. B to Compl. Throughout his state court complaint, Puppala repeatedly emphasizes his concern about his being overworked and underpaid. *Id*. at 3-8. Only once does he mention deleterious effects on patients or the public, *id*. at 7-8, ¶ 43 (contending that defendants allowed some physicians to forego non-emergency surgeries, "often resulting in an unacceptable standard of medical care of WCCHC patients"), but even then Puppala follows the allegation with a request to terminate his employment contract without liability. Furthermore, in Puppala's supplemental motion for a preliminary injunction, he argues that WCCHC patients are being irreparably harmed and yet asks the court to either declare *his* contract void or give *him* more authority to make changes. Ex. A to Pl.'s Resp. at 5-6. The context of these comments shows that Puppala's only motivation and goal was to secure remedies under his employment agreement.

Therefore, the complaint, as pleaded, fails to permit the inference that Puppala's expression addressed any interest beyond his own. Puppala's speech is not protected by the First Amendment.

**B.     Prior Restraint**

This conclusion forecloses Puppala's prior restraint claim as well. Relying on *Fairley*, Puppala argues that a government official who restrains testimonial speech violates the First Amendment. In *Fairley*, two corrections officers were harassed by fellow officers to prevent them from testifying on behalf of civil rights plaintiffs about mistreatment of inmates in the corrections facility where the officers worked. The court held that the complaint stated a claim for prior restraint under the First Amendment because their duty to speak arose from the court's (subpoena) power, not their job duties. *Fairley* did not entail the question presented here, whether the speech was purely private speech. Rather, there the speech was protected because (a) it addressed a matter of public concern; and (b) it was outside the plaintiff's job duties. Here, by contrast, the court has determined that Puppala's speech was not protected because, although outside Puppala's job duties, it did not address a matter of public concern. As such, the threshold for application of *Fairley*'s rule that a governmental actor may not restrain testimonial speech, has not been crossed. Thus, Puppala's allegations do not permit an inference of unlawful prior restraint.

Accordingly, the court will dismiss the § 1983 action with leave to replead should Puppala be able to allege facts demonstrating expression or motivation outside the context of his law suit.

## II.     Conspiracy

Puppala alleges that Coffey and Cicero conspired to terminate him in violation of his First Amendment rights. Puppala brings two actions based on this conspiracy, one under § 1983 and the other under § 1985. To state a § 1983 conspiracy claim, a plaintiff must allege a viable underlying constitutional claim. *Reynolds* v. *Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). As the court has already determined, Puppala has not sufficiently alleged an underlying constitutional claim because his speech was not a matter of public concern. Thus, Puppala's claim for conspiracy under § 1983 must also fail.

Defendants based their request to dismiss Puppala's § 1985 claims on the absence of an underlying constitutional violation. Because the complaint does not indicate which subsection of §1985 defendants violated, the court will analyze the sufficiency of the complaint under all three. *Low* v. *Letsinger*, 772 F.2d 308, 311 n.2 (7th Cir. 1985). Only § 1985(3) requires an allegation of an underlying constitutional violation. *See Indianapolis Minority Contractors Ass'n, Inc.* v. *Wiley,* 187 F.3d 743, 754 (7th Cir. 1999); *Stern* v. *U.S. Gypsum, Inc.*, 547 F.2d 1329, 1331 n.2, 1341 n.16 (7th Cir. 1977) (construing § 1985(1) and (2) as defining independent constitutional violations for which § 1985(3) provides a remedial cause of action). Lacking a viable constitutional claim, Puppala's possible § 1985(3) claim must be dismissed.

Puppala has failed to make any other argument in opposition to dismissal of his other potential § 1985 claims, but, briefly addressed, none is apparent. Subsections (1) and (2) address different kinds of conspiracies. Section 1985(1) "applies only to conspiracies aimed at hindering a federal official's discharge of his or her official duties." *Roth* v. *Yingling*, No. 10-C-64, 2010 WL 2732304, at *6 (N.D. Ill. July 8, 2010) (citing *Friedman* v. *Vill. of Skokie*, 763 F.2d 236, 238 (7th Cir. 1985)). Section 1985(2) has two clauses, the first of which "applies only to

intimidation of witnesses in federal court." *See Wright,* 40 F.3d at 1507. The second clause proscribes conspiracies to interfere with witnesses in state court, but only where the conspiracy has a "class-based animus." *Id.*

Puppala was not a federal official, nor does he allege hindrance of any federal official's duties. Therefore, he cannot state a claim under § 1985(1). Puppala was to be a witness in state court, which falls under the second clause of § 1985(2), but the complaint never mentions a class-based motive. Thus, Puppala's claim also fails under § 1985(2). The conspiracy claim is therefore dismissed without prejudice to refiling should Puppala be able to plead facts supporting a claim under § 1985.

## III. State Law Claims

Because all of Puppala's federal claims will be dismissed, the court will decline to exercise pendant jurisdiction over the remaining Illinois state law claim. *See* 28 U.S.C. § 1367(c)(3).

## **CONCLUSION AND ORDER**

For the foregoing reasons, defendants' motion to dismiss [#16] is granted. The federal civil rights claims (Counts I, II & III) are dismissed without prejudice to filing an amended complaint on or before October 21, 2010. The motion to dismiss the state retaliatory discharge claim (Count IV) for lack of jurisdiction is granted.

Dated: September 30, 2010  Enter:_____
JOAN HUMPHREY LEFKOW
United States District Judge